**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MAXUS LIQUIDATING TRUST, <br><br> Plaintiff, <br><br> v. <br><br> GREENSTONE ASSURANCE, LTD. <br><br> Defendant | Case No.: 2:19-cv-401 <br><br> **ORAL HEARING REQUESTED** <br> **JURY TRIAL DEMANDED** |

**DEFENDANT GREENSTONE ASSURANCE, LTD.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS THE MAXUS LIQUIDATING TRUST'S COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................................1

ARGUMENT........................................................................................................................................2

I. THE TRUST CANNOT TRANSFORM LEGALLY UNINSURABLE CLAIMS INTO INSURABLE ONES BY ASSUMING THEM BY CONTRACT. ..........................2

II. COLLATERAL ESTOPPEL, FORTUITY DOCTRINE, LACHES, AND LATE NOTICE ARE LEGALLY DISPOSITIVE DISMISSAL ARGUMENTS. .........................4

III. THE TRUST'S CLAIMS SUFFER FROM FATAL PLEADING DEFICIENCIES, NONE OF WHICH ARE CURED BY ITS OPPOSITION. ..................9

Greenstone respectfully submits this Reply in support of its Motion [ECF No. 8].[1]

## **PRELIMINARY STATEMENT**

To avoid dismissal, the Trust argues that the liability it seeks to impose on Greenstone has nothing to do with the environmental damages resulting from Diamond Shamrock's decades-old intentional pollution, but is instead "based solely on indemnity obligations owed to [OCC] *assumed by contract*." By doing so, it seeks to recharacterize this *insurance* agreement into an *indemnity* agreement. But this attempt fails because the Trust cannot shift Maxus's voluntary assumption of liability into an insurable one unless it comports with the terms of the Policy.

While it is true that the Policy[2] contains a provision that covered liabilities Maxus assumed by contract, that provision, as a matter of well-settled contractual interpretation, must be read in the context of the entire Policy as a whole. Critically, liability coverage for non-accidental pollution is excluded. Reading the provision the Trust relies upon in context with the entire Policy, it is clear that the provision merely provides coverage for liabilities of the type otherwise covered by the Policy, even if those liabilities were assumed by Maxus by contract.

Nor can the Trust transform an otherwise uninsurable liability into an insurable one by asking this Court to ignore the underlying source of its liabilities. The Complaint makes it clear that the liabilities at issue are, at their core, environmental ones; not contractually-assumed ones. Had Maxus—at the time of the execution of the SPA—sought insurance coverage for these environmental liabilities, it could not have obtained such coverage because the liabilities had already occurred, were known, and were the result of intentional pollution. Indeed, these issues

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

[2] Plaintiff only quotes from a single policy in its Complaint and Opposition, Policy No. 22055, which is addressed herein. There are no allegations that the other policies referenced in the Complaint differ materially with respect to the arguments raised herein.

were decided by a court of competent jurisdiction after Diamond Shamrock unsuccessfully sued various other insurers more than three decades ago in seeking insurance coverage for these very same liabilities. The Trust cannot now, 30 years later, re-write history in an attempt to sweep these facts under the rug. If the Trust were right, an insured could shift literally any liability of any dollar amount onto an insurer by simply assuming such liability by contract.

Finally, the Trust's arguments that the principles of collateral estoppel, the fortuity doctrine, laches, and late notice do not apply at the dismissal stage are incorrect and premised on the same faulty assumption underlying the Trust's entire Opposition: that the Trust's claims are new and novel, with no factual history, because they merely involve liability assumed by contract. As shown by the Complaint and documents referenced therein, that assumption is false. As to the TIC and DTPA claims, the Complaint demonstrates the claims are time-barred and unsupported.

## ARGUMENT

### I. THE TRUST CANNOT TRANSFORM LEGALLY UNINSURABLE CLAIMS INTO INSURABLE ONES BY ASSUMING THEM BY CONTRACT.

The Trust asks this Court to disregard the Greenstone Policy terms and transform the agreement from an insurance contract into simply an additional indemnity for OCC's obligations to Diamond-Shamrock. It does so by insisting that its claim "is based solely on indemnity obligations owed to [OCC] assumed by contract." Opp'n at 2, 11. The Trust's interpretation of the Policy and re-characterization of the underlying liabilities from uninsurable, known environmental ones resulting from intentional discharges into insurable contract-assumed ones is absurd. According to the Trust, Greenstone must cover whatever underlying liabilities Maxus has assumed by contract—even if the acts giving rise to them had already occurred—and regardless of whether those underlying liabilities are otherwise covered (or excluded) by the terms of the Policy. That is not how the law reads such insurance provisions. *See, e.g.*, *In re Liquidation of Excalibur Ins. Co.*,

519 N.W.2d 494, 497 (Minn. Ct. App. 1994) ("'Contractual liability coverage' does not cover claims for breach of contract, but only covers tort liabilities of third parties that the insured has assumed by contract with the third party.").

The Court need look no further than the Policy to determine, as a matter of law, that the Trust's allegations are unsupportable. The Coverage grant in Policy No. 22055 is as follows:

> 1. COVERAGE:
>
> Underwriters hereby agree, **subject to the limitations, terms and conditions hereinafter mentioned**, to indemnify the Reassured/Named Assured for all sums which the Reassured/Named Assured shall be obligated to pay by reason of the liability:
>
> (a) imposed upon the Reassured/Named Assured by law
>
> or (b) assumed under contract or agreement by the Reassured/Named Assured and/or any officer, director, stockholder, partner or employee of the Reassured/Named Assured while acting in his capacity as such,
>
> for damages on account of:
>
> i) Personal Injuries
> ii) Property Damage
> iii) Advertising Liability,

Greenstone Policy No. 22055, at § 1 (attached as Ex. 1) (emphasis added).[3] Greenstone is not, as the Trust alleges, focusing on subpart (a) and ignoring subpart (b). *See* Opp'n at 12. Instead, Greenstone is giving subpart (b) its intended meaning as part of the entire Policy. Section 1 of the Policy explicitly states that ***both*** subparts are "subject to the limitations, terms and conditions hereinafter mentioned." The Lister Site liability is not covered by the express terms of the Policy as it ***excludes coverage*** for liability "arising out of seepage and/or pollution. . . irrespective of the cause" including costs for clean up or removal, unless the pollution was "neither expected nor intended." Ex. 1 at Sec. VII, Umbrella Liability Exclusions, ¶ 7, Endorsement No. 1.

The Trust recognizes that the liability for which it is seeking coverage is premised on the

---

[3] The Trust complains that Ex. F was a reinsurance policy rather than the insurance policy issued to Maxus, but admits its terms are the same as those referenced in the Complaint. Opp'n at 4, 7 n.3. Exhibit 1, directly between Maxus and Greenstone, contains terms identical to those in Exhibit F. Greenstone's attachment of a "portion" of this policy is required per this Court's Local Rules, requiring that only relevant excerpts be included. *See id.*; E.D. Tex. L.R. CV-7(b).

environmental damages from the Lister Site.[4] Its attempt to circumvent this intentional pollution exclusion by repackaging its claim as one assumed by contract fails, as it renders meaningless the remainder of the terms and conditions in the Policy. *See Davis- Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 F. App'x 267, 274 (5th Cir. 2008) (rejecting insurance contract interpretation that rendered provision meaningless). Further, as the Aetna Action already held, and the Trust cannot escape, the pollution at the Lister Site was **intentional**. *See Diamond Shamrock Chem. Co. v. Aetna Cas. & Sur. Co.*, 258 N.J. Super. 167, 182, 211 (App. Div. 1992), *cert. denied*, 134 N.J. 481 (1993) ("Whatever else may be said, the continuous release of dioxins from the [Lister Site] was not 'unforeseen,' and the resulting damage was not 'unexpected.'"); *see also* Mot. at 10–11. Accordingly, Maxus's separate grant of an indemnity to OCC cannot overcome or somehow expand the coverage Greenstone provided in its insurance policies to Maxus, which expressly disavows coverage for the intentional pollution from the Lister Site.

## II.   COLLATERAL ESTOPPEL, FORTUITY DOCTRINE, LACHES, AND LATE NOTICE ARE LEGALLY DISPOSITIVE DISMISSAL ARGUMENTS.

The Trust's assertion that collateral estoppel, the fortuity doctrine, laches, and notice cannot be asserted or resolved at the motion to dismiss stage is wrong. *See* Opp'n at 13–15, 18–20. The Fifth Circuit has repeatedly held that parties can assert the defense of collateral estoppel in a motion to dismiss. *See Associated Recovery L.L.C. v. Does*, 769 F. App'x 160 (5th Cir. 2019) (affirming district court's dismissal at motion to dismiss stage on collateral estoppel grounds); *Day v. Lockheed Martin Corp.*, 428 F. App'x 275 (5th Cir. 2011) (same). Similarly, courts have applied

---

[4] *See* Compl. ¶ 15 (Maxus assumed responsibility to indemnify OCC for liabilities related to the Lister Site under SPA); ¶ 16 (New Jersey filed suit to recover damages incurred as a result of operations at the Lister Plant); ¶ 18 (Maxus required to indemnify OCC for "all liabilities related to the Lister Plant."); ¶ 19 (OCC filed claims against Maxus for reimbursement of environmental damages for which Maxus is liable pursuant to the SPA); ¶ 20 (Maxus settled OCC's claim for "environmental remediation and restoration costs and expenses").

the fortuity doctrine concept at the motion to dismiss stage and the Trust cites no case law indicating the contrary. *See* Opp'n at 14; *City of Sterling Heights v. United Nat'l Ins. Co.*, No. 03-72773, 2005 WL 5955826, at *11–12 (E.D. Mich. Mar. 14, 2005) (granting motion to dismiss because insurance cannot cover known losses).[5] And "even the defenses of limitations or laches may be asserted by motion to dismiss for failure to state a claim" where the complaint "shows affirmatively that the claim is barred." *See Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958).

As to collateral estoppel, the Trust's only defense to its application is that the issue here is not pollution liability for the Lister Site, but rather "Maxus' contractual liability to Occidental." Opp'n at 16. The Trust's assertion is belied by its own Complaint, which evidences that the underlying issue is liability for pollution from the Lister Site: "Under the SPA, Maxus expressly assumed responsibility to indemnify, defend, and hold Occidental harmless against, among other liabilities, all liabilities related to a former manufacturing plant at 80 Lister Avenue . . . ." Compl. ¶ 15; *see also supra* n.4. Moreover, the Trust states that the relevant policy periods are 1974 to 1998. *Id.* ¶ 2; Opp'n at 7 n.2. If the only relevant issue were the SPA, executed in 1986, as the Trust now contends, then policies prior to 1986 are wholly irrelevant to its assumption of contractual liability. By citing to pre-SPA insurance policies, the Trust has essentially conceded that the environmental liabilities at the Lister Site is the core of its demand for coverage.

This very issue was litigated and necessary to the decision in the Aetna Action. *See* Mot. at 14–15. As the Aetna court noted, "[t]wo separate sets of claims are involved in this litigation.

---

[5] The Trust's cited cases actually support Greenstone's position. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005) (court ***affirmed*** the application of collateral estoppel at motion to dismiss stage); *Paselk v. Bayview Loan Servicing, LLC*, 2016 WL 7799630, at *2 (E.D. Tex. Aug. 23, 2016), *report and recommendation adopted*, 2016 WL 6677490, at *2 (E.D. Tex. Nov. 14, 2016) (affirmative defenses, such as collateral estoppel, can be determined at the motion to dismiss stage when clear from "complaint and any documents attached thereto or referenced therein").

5

The first relates to claims for environmental pollution caused by the release of dioxins and other hazardous chemicals from plaintiff Diamond Shamrock Chemical Company's (Diamond) plant in Newark, New Jersey." *Diamond Shamrock*, 258 N.J. Super. at 179. The issue of whether pollution at the Lister Site was intentional formed the basis of the court's holding in the Aetna Action, and was thus necessary to its determination. *Id.* at 211 ("[W]e rest our holding on the [trial] judge's finding of fact that Diamond knowingly and routinely discharged contaminants over a period of 18 years.").[6] As such, the Trust is estopped from disputing the explicit finding in the Aetna Action that the pollution at the Lister Site was intentional.[7] Because the pollution at the Lister Site was intentional, as determined in the Aetna Action, the fortuity doctrine precludes insurance coverage as a matter of law. *See Warrantech Corp. v. Steadfast Ins. Co.*, 210 S.W.3d 760, 766 (Tex. App. 2006) ("An insured cannot insure against something that has already begun and which is known to have begun."); *Sterling Heights*, 2005 WL 5955826, at *12 (dismissing complaint that "alleged facts showing that it was aware of the losses for which it now seek[s] coverage at the time the [] policies were issued").

The Trust's argument that the fortuity doctrine is not applicable to insurance contracts "when the triggered coverage provision is based on liability assumed under contract" is incorrect.

---

[6] The Trust alleges that Greenstone improperly resorted to extrinsic evidence (Opp'n at 11), but the Fifth Circuit has held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (affirming dismissal for failure to state a claim); *see also* Opp'n at 10 (admitting same); Mot. at 4 n.2, 9. The Aetna Action is cited in the SPA, upon which the Trust relies. The remaining exhibits also fall within the categories of evidence explicitly permitted by the Fifth Circuit and conversion of the Motion to one for summary judgment is unwarranted. Opp'n at 29-30.

[7] The Trust argues that this Court cannot apply collateral estoppel because it cannot take "judicial notice of the findings in the prior Aetna Action" (Opp'n at 16), but collateral estoppel does not involve judicial notice. When collateral estoppel is applied, "the [insured] is…estopped from showing that the prior judgment was based upon an incorrect finding of fact." *USX Corp. v. Adriatic Ins. Co.*, 99 F. Supp. 2d 593, 612 (W.D. Pa. 2000); Mot. at 13–15.

6

Opp'n at 17. As the court in *Warrantech* stated clearly: "fortuity is a requirement of ***all*** insurance policies." 210 S.W.3d at 767 (emphasis in original). Insurance contracts cannot cover losses that are not fortuitous, or those resulting from the insured's activities "which might reasonably be expected to expose them to or result in liability." *Wesco Ins. Co. v. Layton*, 725 F. App'x 289, 293 (5th Cir. 2018); *see also* Mot. Sec.I.A. The Trust's next argument (unsupported by any law) that for the fortuity doctrine to apply, Greenstone would have to prove that Maxus knew "that Occidental would be sued separately by the government and third parties nineteen years later, and would decide to tender those claims to Maxus under the SPA" (Opp'n at 17), is simply not the applicable legal standard. All Greenstone need demonstrate, as it has done, is that the insured knew "they were 'engaging in activities' which might reasonably be expected to expose them to or result in liability." *RLI Ins. Co. v. Maxxon Sw. Inc.*, 108 F. App'x 194, 199 (5th Cir. 2004).

Finally, the Trust's claims are barred by late notice and under the doctrine of laches. With respect to notice, the Trust's failure to "give timely notice" of its claims against Greenstone "is a breach of the insurance contract and relieves the insurer of its obligation to defend or indemnify." *Am. States Ins. Co. v. Hanson Indus*., 873 F. Supp. 17, 27 (S.D. Tex. 1995). Pursuant to the Policy, Maxus was obligated to give Greenstone notice of its claims once it had "information from which [they] may reasonably conclude that an occurrence covered" under the policy "is likely to involve this policy." Ex. 1 at Sec. VII, Conditions at ¶ F. The Trust's own pleadings contain more than sufficient factual information for the Court to bar its claims. First, when Maxus sold the stock of Diamond Shamrock to OCC, pursuant to the terms of the SPA executed in 1986, it "expressly assumed responsibility to indemnify" OCC for, "among other liabilities, all liabilities related to…the 'Lister Plant.'" Compl. ¶ 15; *see also* Exhibit 2, Fourth Am. Compl. at ¶ 35, *N.J. Dept. of Envtl. Prot. v. OCC et al.*, ESX-L9868-05, (N.J. Super. Sept. 28, 2012) (addressing same). Second,

7

in the 1986 SPA, Maxus (the seller) expressly reserved the right to "continue or to settle pending Litigation or claims filed against" any then-current insurers, "including, without limitation," the Aetna Action "on account of losses suffered by any Diamond Company as a result of its products or damage to the environment…" SPA § 8.14. Third, the EPA detected "hazardous substances" at the Lister Site in 1983 and declared it a Superfund Site in 1984. Mot. at 5. Finally, the Trust's pleadings admit that Maxus was sued (and "that the Occidental Contractual Claim was made") in 2005. *See* Opp'n at 19; Compl. at ¶ 17. These facts show that the Trust (and its predecessors) knew of the potential liability underlying its claims here by 1984, but certainly since Maxus acknowledges in its brief and Complaint that the Occidental Contractual Claim was "made" by 2005, s*ee* Opp'n at 15; Compl. ¶¶ 17, 25, at the ***very latest*** by 2005, when the claim was "made," notice was required. Maxus delayed making any claim for coverage to Greenstone until 2015, ten years later. Such an undue and extreme delay, coupled with the fact that Maxus settled the case without Greenstone's knowledge or consent, certainly bars the claim both under timely notice principles and under the doctrine of laches. *See Yorkshire Indem. Co. v. Roosth & Genecov Prod. Co.*, 252 F.2d 650, 656–57 (5th Cir. 1958) (insurance companies are entitled to "prompt" notice as "[t]he longer it is postponed the greater the likelihood of the loss of valuable information or available evidence"). Indeed, laches also applies to bar "antiquated" and "stale" claims where there has been an unreasonable delay in bringing such claims by a claimant who has "slumber[ed] on their rights." *Thorne v. Union Pac. Corp.*, 290 F. Supp. 3d 635, 643 (W.D. Tex. 2017).

The Trust cannot revive its stale claims by asserting that ***only*** Maxus's assumption of the underlying liability by contract is before this Court, by arbitrarily focusing on later supplementation to OCC's claim, or by stating that judgment was only entered against Maxus in 2016. *See* Opp'n at 19; *Warrantech*, 210 S.W.3d at 766 (rejecting argument that judgment had to

8

be fixed before it was considered known loss); *Thorne*, 290 F. Supp. 3d at 644 (laches barred claim that plaintiff knew could lead to litigation).[8] This Court should not permit the Trust to, "with no real change in any underlying facts subsequent to the time of the [occurrence], not only 'revive' but energetically translate what [the evidence demonstrates] was not only a sleeping but a dead dog into a very healthy lawsuit of high recoveries." *See Yorkshire*, 252 F.2d at 656.

### III. THE TRUST'S CLAIMS SUFFER FROM FATAL PLEADING DEFICIENCIES, NONE OF WHICH ARE CURED BY ITS OPPOSITION.

Despite the Trust's assertion, the Motion dedicates ten pages detailing why each of the Trust's claims are ***not well-pleaded***, and why they do not evince plausible claims for relief. Mot. at 19–29.[9] As to its TIC and DTPA claims, the face of the Complaint establishes that both are barred by the statute of limitations.[10] The Complaint states that Marsh, as Greenstone's broker, "informally rejected" Maxus's claim for coverage in May 2016. Compl. ¶ 26.[11] That rejection constitutes a denial of coverage by Greenstone, and was sufficient to put Maxus (and the Trust) on notice and thus trigger accrual. *See Nance v. State Farm Fire & Cas. Co.*, No. 2:17-CV-00538-

---

[8] With respect to the prejudice requirements of laches and notice, the extended delay here and ***unique nature of this action*** (with known liability and actually litigated identical claims beginning between at least ten and 35 years prior to this suit) can be sufficient to demonstrate prejudice. *See De Benavides v. Warren*, 674 S.W.2d 353, 362 (Tex. App. 1984) ("seven year delay in filing suit made it more difficult to retrieve the evidence" and resulted in prejudice); *Thorne*, 290 F. Supp. 3d. at 646 (due to decades long delay, "[d]efendant ha[d] lost access to nearly all potential witnesses" and had thus proven prejudice).

[9] Providing "Maxus the opportunity to conduct discovery" will do nothing because Maxus (and its predecessors) owned Greenstone during the ***entire*** period during which the Trust alleges the relevant policies were issued (1974 through 1998). *See* Opp'n at 1, 7 n.2. As such, it is Maxus (now the Trust) that is in possession of documents relevant to that time period.

[10] The Trust does not rebut Greenstone's argument that claims brought under the DTPA are barred by the applicable two-year statute of limitations. *See* Mot. at 24–25.

[11] Notably, Maxus acknowledged in the bankruptcy that it "previously gave notice of the claim to Greenstone, and coverage for the claim was ***denied*** in 2015." *See In re Maxus Energy Corp. et al.*, No. 16-11501, D.E. 1232, at 21 (D. Del. Bankr. April 19, 2017).

9

JRG, 2017 WL 7052146, at *2 (E.D. Tex. Nov. 21, 2017); *see also Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990) (statute of limitations accrued when an ***insurer's agent*** denied coverage). The Trust fails to provide an alternate accrual date; instead, the Trust goes as far as disputing that a denial of coverage by Greenstone would ***ever*** trigger the statute of limitations (Opp'n at 26), which is contrary to Texas law. *Nance*, 2017 WL 7052146, at *2 (even continuing damages "after denial does not prevent limitations from starting to run" as of date of denial).

Further, the Trust has not satisfied the Rule 9(b) heightened pleading standard for its TIC or DTPA claims. The Trust points to paragraph 26 of the Complaint, but it does not describe ***how*** or ***when*** Greenstone deceived Maxus or made representations that would give rise to liability under the TIC or the DTPA (or ***any*** representations regarding coverage). *See* Mot. at 25–26. As to its arguments regarding TIC Section 541.151(2), the Trust's Opposition focuses on alleged misrepresentations made ***after*** a claim for coverage, yet the Complaint does not allege ***any*** misrepresentations made by Greenstone, either after or before Maxus's claim for coverage. Opp'n at 28;[12] Mot. at 27–28. And a mere denial of coverage does not constitute a misrepresentation under the DTPA. *See Tellez v. Encompass Ins. Co. of Am.*, No. 5:02-cv-214, 2004 WL 742912, at *3 (E.D. Tex. Jan. 28, 2004). Moreover, as the Trust has conceded, detrimental reliance is a necessary element of a DTPA claim. Opp'n at 27–28; *see also Crossland v. Canteen Corp.*, 711 F.2d 714, 726 (5th Cir. 1983). But here, the Trust pleads no facts alleging detrimental reliance or that it incurred additional damages as a result. As such, the TIC and DTPA claims should be dismissed.

---

[12] The Trust relies on *Webb v. International Trucking Company*, but that case involved ***post-denial*** misrepresentations that induced detrimental reliance by the insured. 909 S.W.2d 220, 228 (Tex. App. 1995). Here, the Trust did not allege that Greenstone made any representations, much less post-denial misrepresentations or detrimental reliance. Opp'n at 28; *see* Mot. at 27–28.

Dated: March 16, 2020

Respectfully submitted,

*/s/ Edward Soto*

Edward Soto (admitted *pro hac vice*)
Fla. Bar No. 0265144
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel:   (305) 577-3100
Fax:   (305) 374-7159
Email:  Edward.Soto@weil.com

*Lead Attorney for Defendant Greenstone Assurance, Ltd.*

11

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed electronically with the Clerk of the Court using CM/ECF on March 16, 2020. As such, the foregoing was served electronically upon all counsel of record.

*/s/ Edward Soto*
Edward Soto