**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MAXUS LIQUIDATING TRUST., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:19-CV-00401-JRG |
| | § | |
| GREENSTONE ASSURANCE, LTD., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Greenstone Assurance, Ltd.'s ("Greenstone") Motion to Dismiss the Maxus Liquidating Trust's ("Maxus") Complaint (the "Motion"). (Dkt. No. 8). The Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court heard oral argument on the Motion on June 16, 2020. Having considered the briefing and oral argument, the Court finds that the Motion should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**I.   BACKGROUND**[1]

In 1951, Diamond Alkali Company ("Diamond Alkali"), predecessor to the current Plaintiff Maxus, began operating a chemical refinery at 80 Lister Avenue, Newark, New Jersey (the "Lister Site"). (Dkt. No. 1 ¶ 15). The Lister Site sits near or adjacent to the Passaic River. (Dkt. No. 8 at 1). From 1951 through 1969, it produced certain chemicals, the process for which produced TCDD (a commonly known dioxin) as a byproduct. (*Id.* at 4). In 1973, Diamond Alkali obtained umbrella liability, general liability, and pollution liability insurance coverage from Greenstone (through its predecessor Seahorse Reinsurance Ltd.). (Dkt. No. 1 ¶ 13). These policies

---

[1] Unless otherwise stated, the facts recited include undisputed facts and factual allegations included within the Complaint which the Court must accept as true for the purposes of this Motion.

insured against certain risks associated with the insured's chemical manufacturing operations. (*Id.*). Each of the policies included a provision requiring Greenstone to indemnify Maxus "for all sums" Maxus "shall become legally obligated to pay by reason of the liability: . . . (b) assumed under contract or agreement" by Maxus for all damages on account of personal injury and property damage "caused by or arising out of each occurrence happening anywhere in the world." (*Id.* ¶ 12). Greenstone issued such policies to Diamond Alkali for a number of years. (Dkt. No. 8 at 4). It eventually began issuing similar policies to Diamond Shamrock Chemicals Company (Diamond Alkali's successor) in the early 1980s. (*Id.*). In 1983, Diamond Shamrock Chemicals Company ("Diamond Shamrock") was acquired by Maxus Energy Corporation ("MEC"). (*Id.*).

Also in 1983, the Environmental Protection Agency ("EPA") detected hazardous substances coming from the Lister Site. (*Id.* at 5). The EPA notified the owner of the Lister Site about such hazards and a remediation plan was developed in response. (*Id.*). In 1984, the Lister Site was designated by the EPA as a Superfund Site. (*Id.*). As a result, MEC sought to enforce coverage from its many other insurers (the "Aetna Action") but not from Greenstone. (*Id.* at 5–6). MEC incurred substantial costs incident to the Lister Site and its remediation efforts. (*Id.*). In 1986, MEC carved out and sold Diamond Shamrock, including the Lister Site, to Occidental Chemical Company ("Occidental") under a negotiated Stock Purchase Agreement (the "SPA"). (Dkt. No. 1 ¶ 15; Dkt. No. 8 at 5). Pursuant to the SPA, MEC was required to indemnify Occidental for, among other things, all liabilities related to the Lister Site, but it was allowed to retain and pursue any ongoing litigation or claims filed against any of its insurers, specifically including the Aetna Action. (Dkt. No. 1 ¶ 15; Dkt No. 8 at 5).

Throughout this time, Greenstone continued to issue subsequent insurance policies of the same type to MEC until 1998 (collectively, the "Policies"). (Dkt. No. 1 ¶ 2).

2

In 2005, the New Jersey Department of Environmental Protection ("NJDEP") and the EPA sued Occidental regarding environmental damages associated with the operation of the Lister Site occurring between 1951 to 1969 (the "New Jersey Litigation"). (*Id.* ¶¶ 16–17). Later that same year, Occidental tendered the New Jersey Litigation to MEC seeking indemnification pursuant to the SPA. (*Id.*). In 2008, Occidental subsequently sued MEC in the Superior Court of New Jersey asserting claims for breach of contract and indemnification ("Occidental Claim") under the SPA and regarding the New Jersey Litigation. (*Id.* ¶ 17). In February of 2015, MEC tendered the Occidental Claim to Greenstone for coverage based on the Policies. (*Id.* ¶ 25). In 2016, Occidental settled the New Jersey Litigation (the "Settlement"). (Dkt. No. 8 at 6). In April of 2016, the Superior Court of New Jersey held that MEC was required to indemnify Occidental for the Settlement ("New Jersey Court Holding"). (Dkt. No. 1 ¶ 18). In May of 2016, Greenstone "informally rejected" MEC's claims seeking coverage regarding the Occidental Claim because MEC could not present physical copies of the Policies. (*Id.* ¶ 26). MEC next requested that Greenstone formally take a coverage position in writing (either accepting or denying coverage), and that it also search for and locate the physical Policies in question. (*Id.*). In June of 2016, MEC filed for Chapter 11 Bankruptcy in the District of Delaware. (*Id.* ¶ 19). In light of MEC's bankruptcy, Occidental filed its proof of claim relying upon the SPA and the New Jersey Court Holding. (*Id.*). In July of 2016, Greenstone informed MEC that it would not provide a written coverage position regarding insurance coverage regarding the Occidental Claim, nor would it undertake to search for physical copies of the applicable Policies. (*Id.* ¶ 26).

In 2017, the Bankruptcy Court approved MEC's Chapter 11 plan, which called for the creation of Maxus, the Plaintiff in this case. (*Id.* ¶ 20). As part of MEC's Chapter 11 plan, MEC settled the Occidental Claim for approximately $510,000,000. (*Id.*). In December of 2019, Maxus

sued Greenstone relating to the Policies issued from 1973 to 1998 for various breach of contract claims and alleged violations of the Texas Insurance Code ("TIC") and the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA"). (Dkt. No. 1). Greenstone now asks the Court to dismiss all of Maxus's claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 8).

## II.    LEGAL AUTHORITY

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby*, 681 F.3d at 217. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As the Supreme Court noted, the plausibility requirement is not akin to a "probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" that the defendant is liable for the alleged misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007).

## III.    ANALYSIS

Greenstone challenges each of Maxus's six claims for relief listed in its Complaint. (Dkt. No. 1). The Court addresses these in the order raised by Greenstone. (Dkt. No. 8).

4

### a. Breach of Contract, Anticipatory Breach of Contract, and Declaratory Relief (Counts I-III Respectively)

Greenstone alleges that Counts I-III of Maxus's Complaint should be dismissed because they are barred by collateral estoppel and the fortuity doctrine, the equitable doctrine of laches, by Maxus's failure to abide by policy notice requirements, and because the allegations Maxus put forth in its Complaint are insufficient to survive a Motion to Dismiss. (*Id.* at 3).

### i. Collateral Estoppel and the Fortuity Doctrine

"[C]ollateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005). Greenstone alleges that Maxus previously litigated the issue in this case in the Aetna Action and that the Court's decision in the Aetna Action is dispositive here. (Dkt. No. 8 at 13). In the Aetna Action, Maxus sued a number of insurance companies for coverage of Maxus's direct liability for environmental damage related to the Lister Site. (*Id.*). In this case, Maxus is seeking insurance coverage for the contractual liability created under the SPA. (Dkt. No. 1 ¶¶ 32–33). Maxus's contract claim was not litigated in the Aetna Action, nor could it have been as the Aetna Action was filed in 1984, and Maxus and Occidental did not enter into the SPA until 1986. (Dkt. No. 8 at 5). As such, collateral estoppel does not apply.

Similarly, Greenstone challenges Maxus's claims based on the fortuity doctrine. (*Id.* at 9–10). The fortuity doctrine precludes coverage when the insured is or should be aware of an ongoing, progressive, or known loss at the time the policy is purchased. *RLI Ins. Co. v. Maxxon Sw. Inc.*, 108 F. App'x 194, 199 (5th Cir. 2004) (applying Texas law). The fortuity doctrine exists to preclude coverage for events that are not accidental or fortuitous. *See id.* In order to establish that Maxus's claims are barred by the fortuity doctrine, Greenstone must prove that at the time Maxus

obtained the Policies from it, Maxus was aware or should have been aware that nearly twenty years into the future, Occidental would incur liability related to the Lister Site which Maxus would be required to indemnify. Greenstone argues that Maxus was aware of this potential liability in 1983 when the EPA detected hazardous substances at the Lister Site, and as such, Maxus obtained the Policies with knowledge that this liability existed. (Dkt. No. 8 at 15). However, Greenstone acknowledged that Maxus developed a remediation plan in 1983 and implemented it at great cost seeking to remediate environmental damage at the Lister Site. (*Id.* at 5). Even though Maxus was aware of the past pollution from the Lister Site, it was actively attempting to remediate such damage. (*Id.*). Greenstone has not shown that at the time Maxus obtained the Policies, Maxus knew that almost 20 years after entering the SPA, it would be required to indemnify Occidental. Under these facts, the fortuity doctrine does not preclude coverage under the Policies.

### ii. Laches

Next, Greenstone alleges that Maxus's claims are barred by laches. (*Id.* at 3). "To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting it rights, and also the moving party's good faith and detrimental change in position because of the delay." *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010). Greenstone argues that Maxus unreasonably delayed for "thirty years" in bringing its claims for relief because it failed to "bring any claims or make any demand for coverage to Greenstone [in 1984]" during the Aetna Action. (Dkt. No. 8 at 16). However, as stated before, the claims in the Aetna Action were fundamentally different than those Maxus asserts here. Here, Maxus's claims arise out of the liability it assumed under contract to Occidental which accrued, at the earliest, in 2005. (Dkt. No. 1 ¶¶ 17, 32–34). This notwithstanding, "the strictures of Rule 12(b)(6), wherein dismissal of the claim is based solely on the complainant's pleading, are not readily applicable to

6

a determination of laches." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys.*, Inc., 988 F.2d 1157, 1161 (Fed. Cir. 1993). "Although a Rule 12(b)(6) motion may be grounded on an affirmative defense, the defense of laches usually requires factual development beyond the content of the complaint." *Id.* The allegations made regarding unreasonableness of delay and material prejudice to Greenstone are hotly disputed. At this early stage of this case those factual issues cannot be decided against Maxus. *See id.* Any laches defense is currently premature, at best, and does not support dismissal within this context.

### iii. Notice Requirements

Greenstone alleges that Maxus's claims are barred by Maxus's failure to abide by the Policy notice requirements. (Dkt. No. 8 at 16). However, at present, only one of the thirteen applicable Policies has been produced by either party.[2] Greenstone alleges that Maxus should have the Policies in its possession, while Maxus makes the same allegations against Greenstone. (Dkt. No. 1 ¶ 13; Dkt. No. 15 at 20; Dkt. No. 17 at 9 fn.9). No matter who has (or should have) possession of the Policies, one thing is certain—the Court cannot determine whether any notice requirements have been met when the Policies themselves are not before the Court. The one policy that has been produced, the 22055 Policy, does contain a provision that requires notice of a claim "as soon as practicable." (Dkt. No. 17-1 at 8). However, this question turns on whether Maxus's claims accrued when Occidental made demands for indemnity regarding the New Jersey Litigation, or whether Maxus's claims accrued at some later date. These are fact questions which require the Court to go beyond the pleadings, and such is improper at the Rule 12(b)(6) Motion to Dismiss stage. *See Encore Bank, N.A. v. Bank of Am., N.A.*, 918 F. Supp. 2d 633, 651 (S.D. Tex. 2013).

---

[2] The parties represent that through the Discovery process, more of the Policies have been produced. (Dkt. No. 44, Motion to Dismiss Hearing Tr. 11:1–6). However, these Policies are not before the Court, and even if they had been, they are not appropriate to consider at the Rule 12 stage.

The impropriety of determining whether Maxus met any notice requirement is only compounded by the fact that one of thirteen Policies listed in the Complaint are before the Court. As such, the Court cannot conclude that Maxus's claims are barred by failure to comply with the Policy notice requirements at this early stage of the case.

### iv. Sufficiency of the Complaint

Lastly, Greenstone claims that Counts I-III of the Complaint are insufficient to state a claim for which relief can be granted. (Dkt. No. 8 at 19–24). Specifically, Greenstone alleges that Maxus cannot state a claim for breach of contract without first producing the Policies or proving all the Policy terms. (*Id.* at 20). Although Maxus may be ultimately required to prove the terms of the insurance Policies to establish coverage, Maxus is not required to produce the Policies or establish all of the Policy provisions at this early stage; instead, Maxus is permitted to address the coverage through evidence gathered during ordinary discovery. *See Chickasha Cotton Oil Co. v. Houston Gen. Ins. Co.*, No. 05-00-01789-CV, 2002 WL 1792467, at *4 (Tex. App.—Dallas Aug. 6, 2002, no pet.) ("When insurance policies are unavailable, the terms of the policies may be proven through secondary evidence"). In its Complaint, Maxus quotes the specific provision it asserts is present in each Policy that entitles it to insurance coverage. (Dkt. No. 1 ¶ 12). Maxus does not fail to state a claim for breach of contract due to its present inability to attach every Policy to the Complaint or prove their contents beyond dispute.

Greenstone also argues that Maxus fails to sufficiently allege a claim for anticipatory breach of contract in Count II of the Complaint. (Dkt. No. 8 at 21). Specifically, Greenstone alleges Maxus has failed to allege any breach of contract prior to any present duty of performance or an intention to refuse to perform in the future. (*Id.*). Plaintiff says in its Complaint that Greenstone anticipatorily breached the Policies through its inaction, denial, or repudiation of "any obligation

to provide indemnity coverage for the Occidental Contract Claim." (Dkt. No. 1 at ¶¶ 46–47). Maxus defines the Occidental Contract Claim as "Occidental's claims for liability assumed by Maxus under the SPA." (*Id.* ¶ 17). Greenstone says this definition shows that Maxus's allegations fail to show any repudiation to perform in the future. (Dkt. No. 8 at 22 fn.17). Maxus, however, disputes that there is no risk of future costs related to the Occidental Contract Claim. (Dkt. No. 15 at 24). Maxus further notes that the Occidental Contract Claim is not limited to liability arising from the Lister Site. (*Id.*; Dkt. No. 44, Motion to Dismiss Hearing Tr. 42:4–12). Maxus alleges that Greenstone's actions of "informally rejecting" and refusing to provide any written position denying Maxus's claims for coverage either constitute a breach of contract or an anticipatory breach of contract. (Dkt. No. 15 at 23). Maxus also argues that Greenstone's failure to acknowledge its Policies or to deny coverage gives rise to Maxus's anticipatory breach of contract claim as well as the need for declaratory relief. (*Id.* at 23–24). Maxus seeks declaratory relief to determine the scope of Greenstone's obligations under the Policies beyond the Occidental Contract Claim. (*Id.* at 24).

"Federal courts have broad discretion to grant or refuse declaratory judgment." *Great Am. Ins. Co. v. Goin*, No. 3:15-cv-75-L, 2017 WL 4238698, at *4 (N.D. Tex. Sept. 25, 2017) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)). At this point in the case, and accepting all pleaded facts as true, the Court concludes that Maxus has sufficiently pleaded facts adequate to put forward a cause of action for breach of contract, anticipatory breach of contract, and declaratory relief.

### b. Violation of Chapter 541 of the Texas Insurance Code and Violation of Section 541.151 of the Texas Insurance Code based on Violations of DTPA Section 17.46 (Counts IV and V Respectively)

#### i. Statute of Limitations

Greenstone alleges that Maxus's claims brought under the TIC and DTPA are barred by the two-year statute of limitations. (Dkt. No. 8 at 24); *See* Tex. Ins. Code. Ann. § 541.162; Tex. Bus. & Comm. Code § 17.565.[3] The limitations period "commences when the wrongful act occurs, resulting in some damage to the plaintiff." *Nance v. State Farm Fire & Cas. Co.*, No. 2:17-CV-00538-JRG, 2017 WL 7052146, at *2 (E.D. Tex. Nov. 21, 2017). Greenstone alleges that Maxus's claims accrued at the latest in May of 2016 when Greenstone's broker "informally rejected" coverage, or in July of 2016 when Greenstone stated that it would not provide a written coverage statement or look for the Policies at issue. (Dkt. No. 8 at 25). Maxus filed its Complaint in December of 2019. (Dkt. No. 1). Accordingly, Greenstone asserts that these claims are barred by the two-year statute of limitations. (Dkt. No. 8 at 25). Maxus disputes that Greenstone denied Maxus's coverage claims in May of 2016. (Dkt. No. 15 at 25–26). In fact, Maxus alleges that Greenstone's continued refusal to provide a written coverage position or search for relevant Policies constitutes ongoing harm for which it is entitled to relief under both the TIC and DTPA. (*Id.*). Given the factual disputes underlying the determination of the accrual date, the Court finds that dismissing Maxus's claims at this early stage is premature and improper.

#### ii. Rule 9(b) Pleading Standard

Greenstone argues that Maxus's TIC and DTPA claims as pleaded fail to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (Dkt. No. 8 at 25). "Claims

---

[3] "Federal district courts siting in diversity jurisdiction apply Texas substantive law, including the state statute of limitations and exceptions." *Nance v. State Farm Fire & Cas. Co.*, No. 2:17-CV-00538-JRG, 2017 WL 7052146, at *2 (E.D. Tex. Nov. 21, 2017).

10

alleging violations of the Texas Insurance Code and the DTPA . . . are subject to the requirements of Rule 9(b)." *Fisher v. Primerica Life Ins. Co.*, No. 1:17-CV-382, 2017 WL 10846281, at *9 (E.D. Tex. Dec. 13, 2017) (internal citations omitted). "To satisfy the heightened pleading standard of Rule 9(b), a plaintiff must plead the who, what, when, where and how of the alleged false representations." *Id.* Greenstone asserts that Maxus fails to describe how or when Greenstone deceived Maxus or made representations that would give rise to liability under the TIC or DTPA. (Dkt. No. 17 at 10). Maxus responds that the specific facts as to its TIC and DTPA claims are adequately laid out in paragraph 26 of its Complaint. (Dkt. No. 15 at 27). These pleaded facts allege that the Greenstone Policies as issued provide coverage, and that Greenstone's failure to investigate the Occidental Contract Claim, its failure to affirm or deny coverage for the Occidental Contract Claim, and its misrepresentations about the Greenstone Policies existence constitute violations of the TIC. (*Id.*). Furthermore, Maxus alleges that Greenstone violated the DTPA by representing that the Greenstone Policies involve rights, remedies, or obligations that it later asserted are not part of the coverage afforded by such policies, and Maxus relied on such misrepresentations to its material detriment. (*Id.*).

The Court concludes that Maxus has met the heightened pleading standards called for in Rule 9(b). Maxus specifically alleges that Greenstone's broker, Marsh (who), claimed that there were no policies and informally "rejected" Maxus' claim for coverage (what) by email (where, how) in May of 2016 (when). (Dkt. No. 1 ¶ 26). Additionally, Maxus alleges that on July 13, 2016, Greenstone refused to open a claim or take a formal coverage position when requested, and that Greenstone representatives have since refused to substantively communicate with Maxus about its coverage claims, telling Maxus to "please just let it go." (*Id.*). The Court finds that these facts as pleaded by Maxus meet the heightened pleading standard of Rule 9(b).

### iii. The Application of the DTPA

Lastly, Greenstone argues that the DTPA is inapplicable because after Maxus made a claim for coverage, Greenstone represented that the Policies did not cover the settlement with Occidental. (Dkt. No. 8 at 27–28). Greenstone argues that such a denial of coverage cannot support a cause of action under the DTPA. (*Id.*). Greenstone next argues that even if it could, Maxus cannot show detrimental reliance, resulting in a failure of any DTPA claim. (*Id.*; Dkt. No. 17 at 10). Maxus responds that it is not *mandatory* that its DTPA claim arises out of misrepresentations made *before* the insurance policy is issued. (Dkt. No. 15 at 27–28). Maxus argues that misrepresentations made *after* a claim for coverage can still give rise to detrimental reliance and damages. *See Webb v. Int'l Trucking Co.*, 909 S.W.2d 220 (Tex. App.—San Antonio, 1995, no writ). Maxus also alleges that Greenstone's misrepresentations regarding its Policies and obligations caused additional and consequential damages to Maxus by limiting the funds available to Maxus. (Dkt. No. 15 at 28).

At this early stage in the case, factual disputes abound regarding Greenstone's alleged misrepresentations and Maxus's detrimental reliance thereon. However, Maxus has pleaded specific facts that, taken as true, state a sufficiently plausible claim under the DTPA.

### c. Punitive Damages and Attorneys' Fees (Counts IV-V and Count VI Respectively)

Greenstone's argument that Maxus cannot recover enhanced damages under § 541.152(b) of the TIC should be denied since the Court has recognized that Maxus can establish a claim under both the TIC and DTPA. For the same reasons, Greenstone's argument that Maxus cannot recover attorneys' fees under any of its alleged causes of action (Counts I-II, IV-VI) should be denied since the Court has found that Maxus can establish a claim for relief on Counts I, II, IV, V, and VI. However, in their argument before the Court, Greenstone and Maxus both agreed that Maxus's claim for attorneys' fees under Texas Civil Practice and Remedies Code § 37.009 is improper

given that such statute is procedural and not substantive in nature and as such does not apply to cases brought in federal court based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). (*Id.* at 29; Dkt. No. 8 at 29; Dkt. No. 44, Motion to Dismiss Hearing Tr. 29:17–21). Accordingly, and in light of such agreement, the Court finds that Greenstone's Motion should be **GRANTED** solely as to this issue.

### IV. CONCLUSION

In light of the foregoing, the Court finds and holds that the Motion to Dismiss should be and is **GRANTED** solely as to Maxus's claim for attorneys' fees pursuant to Texas Civil Practice and Remedies Code § 37.009, but said Motion is **DENIED** in all other respects. As such, Maxus's claims for attorneys' fees pursuant to Texas Civil Practice and Remedies Code § 37.009 is **DISMISSED**. All other relief sought by Greenstone pursuant to the Motion is **DENIED**.

**So ORDERED and SIGNED this 24th day of June, 2020.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE